IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DARRYLL LELAND BRISTON,          )
          Plaintiff,             )
                                 )
     v.                          )  Civil Action No. 08-0935
                                 )
MATTHEW WHOLEY, ESQUIRE,         )
ALLEGHENY COUNTY DISTRICT        )
ATTORNEY's OFFICE,               )
          Defendant.             )

MEMORANDUM and ORDER

Gary L. Lancaster,
District Judge.                                    September 8, 2008

          This is a petition for writ of habeas corpus.  On July

7, 2008, Darryll Leland Briston ("petitioner") filed a motion to

proceed in forma pauperis and attached thereto a pro se petition

seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 [Doc.

No. 1].  The petition alleges that the Allegheny County District

Attorney's Office is prosecuting him in violation of the Double

Jeopardy Clause of the Fifth Amendment to the United States

Constitution and 18 Pa.Cons.Stat. § 111.

          The court granted the motion to proceed in forma

pauperis and ordered respondent to show cause why the writ should

not be granted pursuant to 28 U.S.C. § 2243.  [See Doc. No. 3].

The Commonwealth of Pennsylvania (the "Commonwealth"), through

the Allegheny County District Attorney's Office, filed a timely

response on July 30, 2008.

The Commonwealth contends, inter alia, that the petition should be dismissed because petitioner has failed to exhaust his federal double jeopardy claim in state court. For the reasons that follow, the petition for writ of habeas corpus will be dismissed.

## I. BACKGROUND

The petitioner is proceeding pro se and, therefore, the petition does not fully set forth the necessary factual and procedural background. As these facts are crucial to this decision, we will discuss the factual and procedural background gleaned from elsewhere in the record in some detail.[1] Unless otherwise noted, the underlying facts are not in dispute.

On April 15, 2002, agents from the federal Bureau of Alcohol, Tobacco and Firearms ("ATF") and officers from the Borough of Rankin Police Department executed an arrest warrant at the residence of Richard Powell. Mr. Powell was arrested on drug

---

[1]     The court gathered the facts and procedural background from the following sources: the petition and exhibit thereto; the Commonwealth's response and exhibits thereto; records of the state court proceeding at CC: 200505573, including the criminal docket sheet, transcripts, pleadings, opinions and memoranda; and records of the federal court proceeding at Crim. No. 04-0058, including the docket sheet, pleadings, and portions of the trial transcript.

2

and gun charges. Although $5,885.00 was seized during the arrest, the federal agent in charge determined that the ATF had no grounds for seizing the money. Petitioner, the Chief of the Rankin Police Department at that time, was at the scene and took possession of the money.

After the arrest of Richard Powell, Tamera Brice, who also lived at the residence where the seizure occurred, contacted petitioner regarding the $5,885.00. Ms. Brice alleged the money belonged to her. Over a period of several months, Brice attempted to retrieve the seized money from petitioner but was unsuccessful.

In June of 2003, an unknown driver struck Brice's vehicle in a hit-and-run accident while it was parked outside of her residence. Sometime after this accident, petitioner allegedly told Brice that he "felt sorry for her" and would pay to have her vehicle repaired. Petitioner does not dispute that he wanted "to do her a favor and help her get her car fixed." After the vehicle was towed to a repair shop, Brice again asked petitioner about the seized money. Petitioner told her that the repairs to her vehicle would cost approximately the same amount as was seized from her residence and that he would pay for these repairs with the $5,885.00.

3

An investigation revealed, however, that the repairs to the vehicle totaled only approximately $1,900.00. The owner of the repair shop, Omar Deer, told investigators that petitioner made several payments for the repairs. Investigators also interviewed Omar Deer's son, Samuel Deer, who stated that shortly after the shop repaired and returned Brice's vehicle in September of 2003, petitioner came back to the shop and requested an estimate for the repairs "for his records." According to Samuel Deer, petitioner told him that the estimate needed to match those the owner had received, namely, $5,787.32. Samuel Deer admitted that he prepared an invoice as petitioner directed in the amount of $5,787.32 but he did not mark the estimate as being "paid" because petitioner did not, in fact, pay $5,787.32 for the repairs. In December of 2003, petitioner asked Samuel Deer to provide a second invoice indicating that the $5,787.32 had been paid for the repairs to Brice's vehicle. Samuel Deer provided a second invoice and backdated it to October 9, 2003.

On December 10, 2003, a hearing was held in the Court of Common Pleas of Allegheny County regarding Brice's petition seeking the return of the money petitioner seized from her residence. At the hearing, petitioner was duly sworn and testified that he took possession of the seized money on April 15, 2002. Petitioner further testified that after Brice's

4

vehicle was hit, he obtained an estimate from a repair shop in the amount of $5,787.32.00. According to petitioner's testimony, he paid for these repairs from the $5,885.00 that was seized, leaving a balance of $97.68.

In March of 2004, a federal grand jury issued a subpoena directed to the Rankin Police Department. The subpoena ordered the department to produce, by March 16, 2004, documents pertaining to the seizure, storage, and disposition of the seized money. At the time of service, petitioner was still the Chief of the Rankin Police Department.

During the federal investigation, Officer Richard Salters and another Rankin police officer told investigators that on March 12 and March 13, 2004, petitioner directed them to obtain the J-Net photographs and signatures of Brice and Samuel Deer from the West Mifflin Police Department, which they did. Salters told investigators that petitioner brought the J-Net photographs of the signatures of Brice and Samuel Deer with him to Salters's home on March 14, 2004. Officer Salter further stated that he, petitioner, and Salters's girlfriend April Hurd sat at his dining room table while Hurd practiced writing the signatures of Brice and Samuel Deer.

According to Salters, petitioner then asked Hurd to forge Brice's signature on an evidence release form which was

backdated to September 13, 2003. The form stated that petitioner requested $5,787.32 of the seized money be released to the repair shop. Another evidence release form, upon which Hurd forged Samuel Deer's signature, was backdated to October 9, 2003 and stated that petitioner had released $5,787.32 in cash for the repairs at Brice's request. Salters also signed both forms, purporting to have witnessed Brice and Samuel Deer sign the documents. Hurd admitted to forging the signatures of Samuel Deer and Brice on the evidence release forms at petitioner's request. Petitioner instructed Salters to deliver these forged documents to the U.S. Attorney's Office.

On March 17, 2004, the grand jury returned an indictment against petitioner. Petitioner was fired as Chief of Police on or about March 28, 2004. In November of 2004, petitioner was tried and convicted in the United States District Court for the Western District of Pennsylvania on several counts, including, inter alia, two counts of obstruction of justice. U.S. v. Briston, Crim. No. 04-0058 (W.D. Pa.).

These charges stemmed from petitioner's seizure of the $5,885.00 from Brice's residence. Specifically, the obstruction of justice charges were based upon petitioner's acts of creating and providing false documents to a federal grand jury on March 16, 2004 and planting evidence in the Rankin Police Department

6

prior to a search by the Federal Bureau of Investigation and the
Pennsylvania State Police. After a jury found him guilty of
these and other charges, petitioner was sentenced to a term of
imprisonment of 37 months. Petitioner was released from federal
custody in January of 2008.

On February 15, 2005, after petitioner was convicted in
federal court, petitioner was charged by criminal information in
the Court of Common Pleas of Allegheny County, Pennsylvania, with
one count of perjury, in violation of 18 Pa.Cons.Stat. § 4902.
The state criminal complaint alleged that, in December of 2003,
petitioner knowingly gave false testimony under oath at the
petition hearing regarding the return of the $5,885.00 seized
from Brice's residence.

Petitioner, who was represented by counsel in the state
court proceeding, asserted that the perjury charge in state court
stems from the same conduct for which he was tried and convicted
in federal court. Petitioner filed a motion to dismiss the
perjury charge based solely upon the Commonwealth of
Pennsylvania's prohibition of double jeopardy codified at 18
Pa.Cons.Stat. § 111.[2] Petitioner argued only that his state

---

[2] 18 Pa.Cons.Stat. § 111 provides that prosecution
in Pennsylvania is barred when a former
prosecution in another jurisdiction "resulted in
an acquittal or in a conviction ... and the
(continued...)

7

prosecution for perjury was barred under Pennsylvania law.
Petitioner did not raise any federal constitutional double
jeopardy claim in his motion to dismiss.

The Court of Common Pleas granted petitioner's motion
to dismiss based upon 18 Pa.Cons.Stat. § 111. Commonwealth of
Pa. v. Briston, No. 200505573, slip. op. (Pa. Commw. Ct. Dec. 27,
2006). According to a transcript of the hearing and the court's
opinion regarding petitioner's motion to dismiss, the Court of
Common Pleas found that the state perjury charge and the federal
obstruction of justice charges involved the same course of
conduct and that the laws defining these offenses were designed
to prevent substantially the same harm, "subverting justice."

The Commonwealth, however, appealed the dismissal of
the perjury charge to the Superior Court of Pennsylvania.
According to the Commonwealth, the issue presented on appeal was
"[w]hether the lower court correctly dismissed the criminal
information against [petitioner] pursuant to 18 Pa.Cons.Stat. §

---

[2](...continued)
subsequent prosecution is based on the same
conduct ... unless the offense of which the
defendant was formerly convicted or acquitted and
the offense for which he is subsequently
prosecuted each requires proof of a fact not
required by the other and the law defining each of
such offenses is intended to prevent a
substantially different harm or evil." 18
Pa.Cons.Stat. § 111(1)(i).

8

111." The Superior Court of Pennsylvania concluded that the lower court did not correctly dismiss the perjury charge pursuant to 18 Pa.Cons.Stat. § 111 and reversed the decision of the Court of Common Pleas of Allegheny County. Commonwealth of Pa. v. Briston, 944 A.2d 788 (Pa. Super. Ct. 2007); Commonwealth of Pa. v. Briston, No. 1456, slip op. at 13 (Pa. Super. Ct. March 6, 2008).

Applying only Pennsylvania law regarding double jeopardy under 18 Pa.Cons.Stat. § 111, the Superior Court concluded that the state charge for perjury and the federal conviction for obstruction of justice were not based on the same conduct. Accordingly, the Superior Court held that 18 Pa.Cons.Stat. § 111 was not a bar to petitioner's state prosecution. The Superior Court noted that the parties did not dispute that the alleged act of perjury occurred on December 10, 2003, when petitioner testified at the petition hearing regarding Brice's seized property. It was not until three months later, in March of 2004, that petitioner submitted false and forged documents to the federal grand jury and planted evidence, which precipitated the federal charges of obstruction of justice. While the Superior Court recognized that the "wellspring" for all of petitioner's actions was the seizure of the $5,885.00 from Brice's residence, it did not see "how everything that follows is

9

necessarily part of a 'common and continuing scheme.'"
Commonwealth of Pa. v. Briston, No. 1456, slip op. at 11-12.

The Supreme Court of Pennsylvania denied petitioner's
Petition for Allowance of Appeal. Commonwealth of Pa. v.
Briston, No. 563, 2008 WL 2199833 (Pa. May 28, 2008). Petitioner
then filed the instant petition for writ of habeas corpus in this
court on July 7, 2008. His trial in state court on the perjury
charge is currently scheduled to begin on October 6, 2008.

## II.   DISCUSSION

The pro se petition[3] before us seeks the dismissal of
the state criminal charge for perjury. Specifically, petitioner
claims that the Commonwealth's prosecution of him for perjury,
following his federal conviction for obstruction of justice,
violates the Fifth Amendment's protection against double
jeopardy. Petitioner also claims that the Court of Common Pleas
of Allegheny County did not err in dismissing the state charges
against him pursuant to 18 Pa.Cons.Stat. § 111. Petitioner asks
this court to "affirm" that dismissal. Petitioner contends that
he has "exhausted all state remedies" and, therefore, has the

---

3     Because the petition is pro se, we construe it
      broadly and with all due deference. United States
      v. Garth, 188 F.3d 99, 108 (3d Cir. 1999).

10

right to pursue pre-trial habeas corpus relief here. Essentially, petitioner is asking this court to grant the writ or otherwise intervene in an ongoing state criminal proceeding.

In its response, the Commonwealth argues that although the petition raises a facial Fifth Amendment double jeopardy claim, petitioner has not exhausted his federal claim in state court. According to the Commonwealth, petitioner failed to raise any federal constitutional violation in state court and instead relied solely on statutory double jeopardy pursuant to 18 Pa.Cons.Stat. § 111. Thus, because petitioner did not raise any Fifth Amendment double jeopardy claim in state court, the Commonwealth argues that he has not met the exhaustion requirement for habeas corpus relief. Alternatively, the Commonwealth argues that habeas corpus relief is not appropriate in any event because his federal double jeopardy claim fails under the dual sovereignty doctrine. For the reasons set forth below, we will dismiss the petition.

A. Hearing

As an initial matter, we must determine whether petitioner is entitled to a hearing. The Antiterrorism and Effective Death Penalty Act ("AEDPA") amended the federal habeas corpus statute in such a way as to limit the availability of new evidentiary hearings on habeas review. See 28 U.S.C. §

11

2254(e)(2); see also Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000). The AEDPA requires federal habeas courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" Schriro v. Landrigan, 127 S.Ct. 1933 (2007) (citing 28 U.S.C. § 2254(e)(1)). In deciding whether to grant an evidentiary hearing, the court must consider, inter alia, whether a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Id. (citation omitted).

Here, the factual record underlying the petitioner's double jeopardy claim was fully developed in the state court proceeding and is not in dispute. Petitioner has not rebutted the presumption of correctness of the factual findings of the state court with any "clear and convincing evidence." An evidentiary hearing would not, therefore, enable petitioner to prove factual allegations which would entitle him to habeas corpus relief. Thus, we find an evidentiary hearing is not necessary and will presume that the factual findings in state court are correct.

B. Jurisdiction

Although the petition is captioned as a "Notice of Removal," jurisdiction is expressly premised on 28 U.S.C. §

12

2241(c)(3), which provides that a "writ of habeas corpus shall not extend to a prisoner unless ... [h]e is in custody in violation of the Constitution or laws or treaties of the United States." (emphasis added). It is well-recognized that one awaiting trial when he filed his petition is "in custody" for purposes of habeas corpus jurisdiction under 28 U.S.C. § 2241(c)(3). See Williams v. Oriscello, 441 F.2d 1113, 1115 n.1 (3d Cir. 1971). Here, petitioner is "in custody" because he is awaiting trial for perjury that is scheduled to begin on October 6, 2008 in state court.

The petition raises two claims: (1) that the Superior Court of Pennsylvania erred by reversing the Court of Common Pleas' dismissal of the perjury charge and incorrectly applied 18 Pa. Cons. Stat. § 111; and (2) that pending prosecution in state court violates petitioner's federal constitutional rights under the Fifth Amendment to be free of double jeopardy. We will address whether we must exercise jurisdiction over each claim in turn.

## 1. Statutory Double Jeopardy Claim

The principal argument in the petition involves the application of Pennsylvania law. Petitioner alleges that the Court of Common Pleas of Allegheny County correctly applied 18 Pa.Cons.Stat. § 111 in dismissing the state charges and that the

13

Superior Court of Pennsylvania erred in reversing that decision. However, petitioner's challenge to the Superior Court's interpretation of 18 Pa.Cons.Stat. § 111(1)(i) does not compel habeas corpus relief.

As set forth above, 28 U.S.C. § 2241(c)(3) expressly provides that a writ of habeas corpus shall not extend to a petitioner unless he is in custody "in violation of the Constitution or laws or treaties of the United States." (emphasis added). The purpose of federal habeas review is to decide whether there is a violation of federal constitutional standards. See Barry v. Bergen Co. Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997) (citation omitted). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Absent an allegation that some right guaranteed by the United States Constitution has been violated, "[f]ederal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982). Moreover, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citations omitted).

14

Here, petitioner's challenge to the Superior Court's interpretation of 18 Pa.Cons.Stat. § 111 does not assert a violation of the Constitution or any other federal law. Rather, petitioner seeks federal court review of the state court's application of a state statute. The petition here unambiguously asserts that "the trial court did not err in granting [the] motion to dismiss all charges" and that the "Superior Court erred." Further, the petition specifically asks this court to "affirm the July 11, 2006 trial court order to dismiss the [state] charges in this case." However, federal habeas review is not appropriate for such state court determinations on a question of state law. See Estelle, 502 U.S. at 67-68.

Moreover, it would be futile to allow petitioner to amend his petition to insert some constitutional language because "errors of state law cannot be repackaged as federal errors." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). Petitioner cannot demonstrate that any mistake of state law deprived him of a right guaranteed under the Constitution, laws, or treaties of the United States. Accordingly, the petition's double jeopardy claim does not entitle him to federal habeas corpus review.

15

## 2. Federal Double Jeopardy Claim

Petitioner's only federal claim arises under the Fifth Amendment. We must examine whether this federal double jeopardy claim compels the exercise of pre-trial habeas relief.

While habeas corpus is substantially a post-conviction remedy, a federal court has jurisdiction to issue the writ before a judgment is rendered in a state criminal proceeding. Moore v. DeYoung, 515 F.2d 437, 441-42 (3d Cir. 1975)(citing 28 U.S.C. § 2241)(finding that "federal courts have 'pre-trial' habeas corpus jurisdiction"). Because the nature of the relief sought in any habeas petition implicates weighty issues of comity and federalism, however, these important considerations counsel strongly against exercising the power except in the most extraordinary circumstances. See Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 489-91 (1973)(holding that although federal courts have the power to consider on habeas corpus the merits of a constitutional defense to a criminal charge in advance of a final judgment of conviction, the considerations of federalism counsel strongly against exercising the power).

Where judgment has not yet been entered in the state court, the Court of Appeals for the Third Circuit has held "that jurisdiction without exhaustion should not be exercised at the

16

pre-trial stage unless extraordinary circumstances are present."[4]
See Moore, 515 F.2d at 443 (citations omitted). But, "where
there are no extraordinary circumstances and where petitioner
seeks to litigate the merits of a constitutional defense to a
state criminal charge, the district court should exercise its
'pre-trial' habeas jurisdiction only if petitioner makes a
special showing of the need for such adjudication and has
exhausted state remedies." Id., 515 F.2d at 442 (citing Braden,
410 U.S. at 489-91).

Thus, we must determine whether petitioner has
demonstrated any extraordinary circumstance. If so, then
petitioner is not required to exhaust his state remedies. If no
extraordinary circumstances are present, petitioner must show a
special need for such adjudication and meet the exhaustion of
state remedies requirement. As discussed below, we find that no

[4]     The exhaustion requirement, although not mentioned
in 28 U.S.C. § 2241(c)(3) which empowers district
court to issue the writ in a pre-trial context,
stems from 28 U.S.C. § 2254(b)(1)(A) and provides
that "[a]n application for a writ of habeas corpus
on behalf of a person in custody pursuant to the
judgment of a State court shall not be granted
unless it appears that -- the applicant has
exhausted the remedies available in the courts of
the State." The Court of Appeals for the Third
Circuit has recognized that, "although there is a
distinction in the statutory language of §§ 2254
and 2241, there is no distinction insofar as the
exhaustion requirement is concerned." Moore v.
DeYoung, 515 F.2d 437, 442 (3d Cir. 1975).

17

extraordinary circumstances exist in this case which would compel the court to exercise its power to grant pre-trial habeas relief and excuse the exhaustion requirement. We also find that petitioner has failed to show a special need for such adjudication and has also failed to exhaust his available remedies in state court. Thus, the petition will be dismissed.

a. Extraordinary Circumstances

The court of appeals has not articulated the precise parameters of "extraordinary circumstances" for purposes of exercising pre-trial habeas corpus jurisdiction. However, the court of appeals requires that a habeas petitioner must present allegations that "reveal that quality of delay, harassment, bad faith or other intentional activity which, in an appropriate situation, might constitute an 'extraordinary circumstance', justifying pre-exhaustion federal habeas relief." Lambert v. Blackwell, 134 F.3d 506, 517 (3d Cir. 1997)(quoting Moore, 515 F.2d at 447 n.12).

The "unique nature" of the double jeopardy right may present such an extraordinary circumstance which would warrant habeas corpus relief and obviate the need for exhaustion of state remedies. See Justices of Boston Mun. Court v. Lydon, 466 U.S. 294, 302-03 (1984). The United States Supreme Court has recognized that the federal double jeopardy clause "protects

18

interest wholly unrelated to the propriety of any subsequent conviction" and a "requirement that a defendant run the entire gamut of state procedures, including retrial, prior to consideration of his claim in federal court, would require him to sacrifice one of the protections of the Double Jeopardy Clause." Id. (citing Abney v. United States, 431 U.S. 651, 661 (1977)).

The Court of Appeals for the Third Circuit has also recognized that "where federal constitutional rights are imperiled, there is a federal interest in the case which outweighs [the considerable] concern ... for comity with the states" and "when a state prisoner properly demonstrates to a federal court that the state proceedings have denied him or are about to deny him certain federal constitutional rights, the federal court has the power to grant the writ." United States ex rel. Webb v. Court of Common Pleas, 516 F.2d 1034, 1036-37 (3d Cir. 1975).

In Webb, the court of appeals found that the impending prosecution of a petitioner asserting double jeopardy would result in such an irreparable injury to constitutional liberties as to justify federal intervention.   Id.   There, "special circumstances" existed because forcing petitioner to trial would defeat the very constitutional right he sought to preserve, namely, to be free of double jeopardy after once enduring the

rigors of a criminal trial. Id. Further, because of the nature
of the Fifth Amendment right, "no post-conviction relief, either
state or federal, is capable of vindicating that interest." Id.
at 1037. Accordingly, in assessing whether a double jeopardy
claim presents an extraordinary circumstance, the court must
consider competing interests, including the interest of the
accused in avoiding multiple jeopardy proscribed by the Fifth
Amendment, the strong federal policy of permitting state courts
in the first instance to pass on federal constitutional claims,
and the federal interest of avoiding intervention into pending
state court criminal proceedings absent extraordinary
circumstances.

Pre-trial double jeopardy claims present an appealing
case for the application of a per se finding of "extraordinary
circumstances" justifying federal habeas intervention. "A claim
of double jeopardy, without more, is insufficient to overcome
principles of federalism which dictate respect for the authority
and ability of state courts to protect constitutional rights in
the first instance." See Evans v. Court of Common Pleas, Civ.
No. 90-5036, 1990 WL 223071, at *13 (E.D. Pa. Dec. 20, 1990)
(citations omitted).

Here, the only federal constitutional right asserted in
the petition is the double jeopardy clause of the Fifth

20

Amendment. Petitioner has failed to present any allegations of "delay, harassment, bad faith or other intentional activity." Lambert, 134 F.3d at 517 (quoting Moore, 515 F.2d at 447 n.12). In this circumstance, the federal double jeopardy claim, standing alone, does not compel us to exercise the power to entertain the writ or to excuse the exhaustion requirement. Accordingly, petitioner has failed to carry his burden of demonstrating extraordinary circumstances that justify this court's entertaining the habeas petition prior to his state court trial and without exhaustion of state court remedies.

> b. The Need for This Court to Adjudicate Petitioner's Claims and the Exhaustion of State Remedies

As set forth above, the court could still entertain the petition, if petitioner "makes a special showing of the need for" this court to adjudicate his claims and that he has exhausted his state court remedies. Moore, 515 F.2d at 443 (emphasis added). Petitioner has failed to do either.

First, petitioner has not set forth any special showing of the need for this court to adjudicate his claim. Second, petitioner has failed to exhaust his administrative remedies. It is well-settled that the exhaustion of state court remedies requirement for habeas corpus petitions is not jurisdictional. The requirement is instead "rooted in considerations of federal-

state comity" and is "principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." See Walker v. Vaughn, 53 F.3d 609, 614 (3d Cir. 1995)(citations omitted); Landano v. Rafferty, 897 F.2d 661, 669 (1990). The Supreme Court has noted that "[t]he exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). When presented with a petition seeking to litigate a defense to a criminal charge without satisfying the exhaustion requirement, courts must also consider whether petitioner is seeking to derail or abort the state court proceedings. Braden, 410 U.S. at 489-91.

        To comply with the exhaustion requirement, a state prisoner must first have fairly represented his federal constitutional claim to the state courts on direct appeal, collateral review, or some other available procedures for judicial review. Id.(holding that state courts must have full opportunity to resolve any constitutional issues in established appellate review process); see also Castille v. Peoples, 489 U.S. 346, 351 (1989); Stevens v. Delaware Corr. Ctr., 295 F.3d 361, 369 (3d Cir. 2002); Story v. Kindt, 26 F.3d 402 (3d Cir. 1994);

Bond v. Fulcomer, 864 F.2d 306 (3d Cir. 1998), overruled on other grounds by Harris v. Reed, 489 U.S. 255 (1989). In Pennsylvania, this requirement means that a petitioner in a non-capital case must present every claim raised in his federal petition to both the Common Pleas Court and the Superior Court either on direct appeal or through some other available procedure for review. See Lambert, 387 F.3d at 233-34.[5] With these principles in mind, we conclude that petitioner has not exhausted his state court remedies.

Here, it is clear that petitioner did not raise the federal constitutional double jeopardy claim before the Court of Common Pleas or the Superior Court. Rather, petitioner raised only a statutory double jeopardy claim under Pennsylvania law, specifically 18 Pa.Cons.Stat. § 111, before those state courts. The Supreme Court has stated "it is not sufficient merely that the federal habeas applicant has been through the state courts" and the exhaustion rule would "serve no purpose if it could be

[5]     It is well-recognized in Pennsylvania that a petitioner does not need to seek review from the Pennsylvania Supreme Court in order to give the Pennsylvania courts a "full opportunity to resolve any constitutional claims." In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, No. 218 Judicial Administration Docket No. 1 (Pa. May 9, 2000) ("Order No. 218"). See generally, Lambert v. Blackwell, 387 F.3d 210, 232-34 (3d Cir. 2004).

satisfied by raising one claim in the state courts and another in the federal courts." Picard v. Connor, 404 U.S. 270, 275-76 (1971) In this case, petitioner cannot satisfy the exhaustion requirement where he presented the state courts only with his statutory double jeopardy claim, and failed to raise any federal constitutional claim. Thus, he has not "done all that could reasonably be expected of him to afford the state courts, before he is subjected to the trauma of an additional trial, an opportunity to consider on the merits his constitutional claim that the double jeopardy provision bar[s] his re-trial." See Webb, 516 F.2d at 1037 (internal quotations and citations omitted).

Upon thorough review of the records from the state court proceedings, there is simply no indication that petitioner raised a claim in state court that the state prosecution for perjury violated his Fifth Amendment double jeopardy rights. He instead relied solely on state law pursuant to 18 Pa.Cons.Stat. § 111. Further, petitioner is clearly dissatisfied with the state court proceedings and is seeking to derail them. See Braden, 410 U.S. at 493 (habeas relief must not permit the derailment of a pending state proceeding by an attempt to litigate constitutional defenses prematurely in federal court). Because petitioner did not "fairly present" any Fifth Amendment

double jeopardy claim to the state courts, the very claim that forms the basis for the relief sought here, we find that he has failed to exhaust all available state court remedies.

## C. Younger Abstention

Even assuming petitioner had satisfied the exhaustion requirement, we would abstain from entertaining the writ. Although the petition does not expressly seek injunctive relief, we have construed it broadly, in an abundance of caution, to encompass all forms of relief. To the extent the petition is asking this court to intervene in an on-going state criminal proceeding, the petition will be dismissed.

Absent unusual circumstances, a federal court is not permitted to intervene in ongoing state criminal proceedings. Younger v. Harris, 401 U.S. 37, 54 (1971). The Younger doctrine of abstention provides that a federal court may properly abstain from exercising jurisdiction when to do so would impermissibly interfere with ongoing state proceedings.    See generally, Williams v. Red Bank Bd. of Educ., 662 F.2d 1008 (3d Cir. 1981), overruled on other grounds as recognized in Schall v. Joyce, 885 F.2d 101, 108 (3d Cir. 1989).    Similar to the exhaustion requirement,[6] "[t]he rule barring pretrial intervention into

---

[6]     In Moore, the court of appeals recognized that the doctrines of pre-trial habeas corpus exhaustion
(continued...)

25

pending state criminal proceedings by way of federal habeas corpus or otherwise is premised on the notion of comity, a principle of deference and 'proper respect' for state governmental functions in our federal system." Evans v. Court of Common Pleas, 959 F.2d 1227, 1234 (3d Cir. 1992)(citing Younger, 401 U.S. at 44). Only where there has been a "showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief" is it appropriate for a federal court to enjoin or otherwise interfere in state criminal proceedings.[7] Younger, 401 U.S. at 54.

Again, one such unusual circumstance justifying federal court intervention in a state court proceeding is where a

---

[6](...continued)
and Younger abstention, although not directly related, shared common characteristics: "they are both predicated upon interests of federalism and comity; they both recognize exceptions for extraordinary circumstances; both doctrines are doctrines of judicial restraint; they both envisage adequate state remedies; and, they both bar petitioners who seek to abort state prosecutions, prior to trial or final state review." Moore, 515 F.2d at 448 (internal quotations omitted).

[7]   Although the court of appeals did not suggest that the dimensions of "extraordinary circumstances" in the habeas context are necessarily the same as in the Younger context, it noted that to hold otherwise would be "anomalous" to reconcile disparate results stemming from doctrines evidencing similar principles of federalism and comity.   Moore, 515 F.2d at 448-449 n.14.

petitioner for habeas corpus asserts a claim that a forthcoming trial will constitute a violation of his Fifth Amendment right to be free of double jeopardy. Walck v. Edmondson, 472 F.3d 1227, 1233-34 (10th Cir. 2007)(Younger abstention did not bar federal court intervention in threatened state prosecution where petitioner raised double jeopardy claim).

Here, as set forth above, the petition does not present any exception to the Younger doctrine that would justify federal intervention in an ongoing state criminal proceeding. The petition does not set forth any bad faith, harassment, or other unusual or extraordinary circumstance to warrant federal intervention in an ongoing state criminal proceeding. Thus, we find that the Younger doctrine precludes federal intervention in petitioner's ongoing state court proceeding.

### D. Dual Sovereignty Doctrine

Finally, even were we to exercise jurisdiction over petitioner's federal double jeopardy claim in the absence of extraordinary circumstances and exhaustion of his state remedies, the petition does not raise a colorable federal double jeopardy claim. A district court may deny a claim on its merits despite non-exhaustion "if it is perfectly clear that the applicant does not raise even a colorable federal claim." Granberry v. Greer,

481 U.S. 129, 135 (1987). Although we have declined to exercise jurisdiction based on considerations of comity and federalism, were we to reach the substantive merits of petitioner's constitutional defense in advance of his trial, we would find that his double jeopardy claim cannot survive the dual sovereignty doctrine.

Notwithstanding the Fifth Amendment's constitutional guarantee that "[n]o person shall ... be subject for the same offense to be twice put in jeopardy," the United States Supreme Court has recognized an exception to this guarantee that emanates from our federal system of government. The double jeopardy clause of the Fifth Amendment does not bar successive prosecutions brought by separate sovereigns. United States v. Lara, 541 U.S. 193, 197 (2004). This exception, commonly referred to as the dual sovereignty doctrine, permits successive prosecutions for the same criminal conduct by two distinct governments, each with the status of an independent sovereign, even when the first prosecution has resulted in a conviction. See Heath v. Alabama, 474 U.S. 82, 88-91 (1985).

It is well-established that "[s]tates are separate sovereigns with respect to the [f]ederal [g]overnment because each [s]tate's power to prosecute is derived from its own 'inherent sovereignty.'" Id. at 89 (citations omitted). Thus,

the dual sovereignty doctrine allows successive prosecutions by two different sovereigns for a crime that "violates the peace and dignity" of both. Id. at 88. Accordingly, federal convictions followed by state prosecutions do not violate the double jeopardy clause. United States v. Lanza, 260 U.S. 377 (1922); see also Bartkus v. Illinois, 359 U.S. 121 (1959). An exception to the dual sovereignty doctrine may be found only where the subsequent prosecution is a "sham." Bartkus, 359 U.S. at 124.

Here, petitioner cannot set forth a violation of the double jeopardy clause of the Fifth Amendment. Petitioner's pending state prosecution for perjury subsequent to his federal conviction for obstruction of justice does not violate the double jeopardy clause because the Commonwealth of Pennsylvania and the United States are separate sovereigns, each having the power to prosecute him for a crime that violates the peace and dignity of both. Even construing the pro se petition with all due deference, it fails to allege that the state prosecution is a "sham" or the result of collusion. Pennsylvania's statutory exception to the dual sovereignty doctrine under 18 Pa.Cons.Stat. § 111 does not affect our analysis of whether petitioner has a colorable federal claim. Thus, we find that the petition before us fails to set forth a colorable federal double jeopardy claim.

29

III.    CONCLUSION

Petitioner has not set forth any exceptional circumstance nor has he exhausted his available state court remedies to compel this court to entertain the petition for writ of habeas corpus at the pre-trial stage. Accordingly, the petition will be dismissed.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DARRYLL LELAND BRISTON,          )
          Plaintiff,             )
                                 )
     v.                          )    Civil Action No. 08-0935
                                 )
MATTHEW WHOLEY, ESQUIRE,         )
ALLEGHENY COUNTY DISTRICT        )
ATTORNEY's OFFICE,               )
          Defendant.             )

<u>ORDER</u>

     AND NOW, this ____8ᵗʰ____ day of September, 2008, IT IS

HEREBY ORDERED that the petition for writ of habeas corpus is

DISMISSED.

                              BY THE COURT:

                              _____ J.

cc:  All Counsel of Record